USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
:  **OPINION AND ORDER**
:  **DENYING MOTIONS TO**
IN RE WORLD TRADE CENTER LOWER  :  **REINSTATE 22 DISMISSED**
MANHATTAN DISASTER SITE LITIGATION  :  **PLAINTIFFS**
:
:
:  21 MC 102 (AKH)
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

   This consolidated docket is made up of approximately 800 plaintiffs, each claiming injury because of post-9/11 cleanup work in buildings neighboring the World Trade Center. Approximately 175 buildings are involved, including the Verizon building at 140 West Street (immediately to the North of the World Trade Center), the multi-tenanted buildings of the World Financial Center (a complex between the World Trade Center and the Hudson River), and numerous smaller buildings south, east and north of where the towers of the World Trade Center stood. Plaintiffs have named as defendants the Port Authority of New York and New Jersey, Inc. (the owner of the World Trade Center and its towers), various WTCP-named corporations that hold long-term leases to the destroyed towers of the World Trade Center, the owners of the neighboring buildings in which they worked, and numerous contractors and subcontractors whom the building owners had engaged to perform the clean-up work. The complexity of the discovery process, and the need by all parties and counsel to cooperate and attend to schedules and deadlines cannot be overstated.

   As was the case with the 10,000 plaintiffs (approximately) who had performed the clean-up work at the site of the World Trade Center and who claimed that they had suffered injuries from their work, a rigorous core discovery program had been established by court and

counsel, and with the assistance of special masters, to enable these cases to progress. Each plaintiff had to answer a set of Rule 33 interrogatories "separately and fully under oath," R. 33(b), Fed. R. Civ. P., swearing or affirming that the answers they gave were "true and correct," see 28 U.S.C. § 1746. The moving defendants failed to do that, and failed to cure their neglects despite repeated warnings that their cases would be dismissed in consequence.

The failures and neglects of the moving defendants, and my warnings of dismissals in consequence, are documented in court orders and transcripts of pre-trial conferences. The requirement that answers had to be given under oath was stated clearly in my order of August 29, 2011, and repeated in my order of September 28, 2011, and in the conferences and arguments that preceded these orders. I gave plaintiffs until October 31, 2011 to cure their failures, "but not beyond." October 31 came and went, and plaintiffs still did not cure their deficient or absent responses. Their counsel pleaded for one more extension, and I gave it, to November 14, 2011, but subject again to dismissal if plaintiffs' counsel failed by November 18, 2011 to show cause why the errant plaintiffs should not be dismissed. Counsel identified approximately 170 plaintiffs that were affected by my order and would be subject to involuntary dismissal. On December 3, 2011, two weeks after the deadline, plaintiffs' counsel sought another extension for these 170. By my order of December 8, 2011, I denied the motion, and dismissed the 170 plaintiffs with prejudice.

Defendants then identified another 132 plaintiffs who also had failed to answer their interrogatories under proper oath or affirmation and, on January 11, 2012, moved to dismiss them for failure to prosecute their lawsuits. In response to the motion, all but 31 of this group voluntarily dismissed their lawsuits. I heard oral argument as to the 31 plaintiffs on July 23, 2012 and, on July 25, 2012, ordered their cases dismissed. In response to plaintiffs' counsel's plea, but

mindful of the needs of the cases before me which had to progress, I provided in the order that plaintiffs, by August 24, 2012, could seek relief from the judgment for one or more of the reasons set out in Rule 60(b), Fed. R. Civ. P.

The motion now before me, on behalf of 22 of this group[1] of 31 dismissed plaintiffs, was filed on August 24, 2012. Plaintiffs argue that their failures reflect "excusable neglect," and that their cases should be re-opened. Plaintiffs' motion is denied.

## I. Plaintiffs' Failure to Show a Ground for Relief from the Final Order Dismissing Their Cases

The Federal Rules provide that a final judgment or order "may" be re-opened only for limited reasons. Fed. R. Civ. P. 60. One such ground, the one to which plaintiffs cite, is "Mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Plaintiffs focus on "excusable neglect." They explain that they failed to swear or affirm to the truth of their responses because they were unsure whether to pursue an administrative remedy provided by Congress, or their court suit, and so they did neither. Now that the deadline to pursue an administrative remedy has passed, they ask to keep their court case alive. None of the 22 makes mention of any particular injury they allegedly suffered by reason of their work in the post-9/11 period.

The Victims Compensation Fund (VCF), established by Congress in 2001 and expanded by the James Zadroga 9/11 Health and Compensation Act of 2010, Pub. L. No. 111-347, 124 Stat. 3623 (2011), provided an administrative path to relief for those injured as a result of the September 11 terrorist attacks. Participation in the VCF is voluntary and requires that a party not be a participant in any lawsuit relating to the September 11 attacks. A party could submit proof of withdrawal, settlement, or dismissal, of a September 11 suit prior to January 2,

---

[1] The 22 dismissed plaintiffs are identified in the schedule attached to this opinion.

3

2012, and remain eligible to participate in the VCF. Participation in the VCF also waives a party's right to bring a lawsuit related to the September 11 attacks.

It is impossible to understand why plaintiffs' uncertainty over how to proceed should be deemed "excusable neglect." The orders requiring oaths or affirmations for interrogatory responses were clear, and the consequence of dismissal for failure to comply also was clear. Plaintiffs' argument to the contrary is simply belied by the record of status conferences and pre-trial orders described earlier in this Opinion. An administrative application, if pursued, also would have required truthful information as to injury suffered and place and date of work. Plaintiffs may have regarded their injuries, if any, as too slight to bother with or not covered either by Zadroga or their lawsuit[2], but their change of mind and current wish again to pursue their lawsuit hardly qualifies as "excusable neglect." None of the plaintiffs' affidavits sheds light on why they opted not to bother with either their administrative or their judicial remedy, or why they now change their minds, other than their wish to come back into the lawsuit.

Plaintiffs argue that they had verified their interrogatory answers, swearing (or affirming) on information and belief. But an interrogatory is not an allegation or a claim in a complaint; it is an evidentiary response to a question, and must be sworn (or affirmed) as true. 28 U.S.C. §1786. My court orders clearly ordered that plaintiffs provide proper oaths or affirmations attached or specifically referring to their interrogatory answers. If they had not done so, plaintiffs were ordered to cure their defective responses by given dates if they wished to remain in the lawsuits, and plaintiffs were told that their lawsuits would be dismissed if they

---

[2] Many cancers were not covered in the settlements of the 10,000 lawsuits in the 21 MC 100 consolidated cases involving clean-up work at the World Trade Center. Recent news articles describe a certain degree of greater liberality of coverage under Zadroga. See, e.g., Government Will Fund Care for 50 Types of Cancers Linked to 9/11 Under Zadroga Act, CBS News, Sept. 10, 2012. But this is not an excuse that explains why plaintiffs' neglects to swear that answers are true should be considered "excusable neglect."

4

failed to cure by those dates. The "Verification" and "Certification" forms submitted along with plaintiffs' individual motions and signed after the Court's December 2, 2011, deadline do not help plaintiffs in their claim.

Plaintiffs argue, as to thirteen plaintiffs, that they did submit Certification forms sworn to as true prior to December 2, 2011: Joseph Eramo, 06 Civ. 14632; James Higgins, 07 Civ. 5395; Charles Johnson, 07 Civ. 5558; Egerton Kelly, 06 Civ. 13971; Guy Tedaldi, 07 Civ. 5430; Jerome Tucker, 07 Civ. 5323; Mark Vanbelle, 06 Civ. 11281; Thomas Vario, 05 Civ. 1347; Anthony Alloggio, 07 Civ. 4240; John Colucci, 07 Civ. 1485; Beatriz Conception, 07 Civ. 1594; Luis Vivar, 07 Civ. 4523; Maria Hernandez, 08 Civ. 5156. The motion to reinstate is denied as to these plaintiffs as well, for their answers were not attached to, and did not specifically refer to, their interrogatory answers. An oath that all discovery is true is without meaning for it cannot be effectively challenged as to any specific response. Like a blank check, the signature can mean anything or nothing.

The ground of "excusable neglect" requires the defaulted party to show that his dismissed action has merit. "Generally, courts require that the evidence in support of the motion to vacate a final judgment be 'highly convincing,' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." Kotlicky v. United States Fidelity Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987) (internal citations omitted). "The Second Circuit has instructed that Rule 60(b) provides 'extraordinary judicial relief' that may be granted 'only upon a showing of exceptional circumstances.'" Harrison v. N.Y. City Admin. For Children's Servs., 2005 WL 2033378 at *1 (S.D.N.Y. Aug. 23, 2005) (quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)). None of the plaintiffs makes such a showing.

## II. Reinstatement of the 22 Plaintiffs Would be Unjust to the Many Cases that Previously were Dismissed and to the Onward Progress of the Cases in Active Discovery

Scores of plaintiffs were previously dismissed, or voluntarily dismissed their cases, for failures to prosecute. None has appealed. The conduct of the 22 plaintiffs in this motion is the same as in all the other dismissed cases. Justice requires consistency. It would be unjust to favor these 22 cases when so many others, similarly situated, were dismissed.

The purpose of the core discovery program was to bring all cases forward simultaneously, to allow counsel for plaintiffs and defendants, and the court and the special masters, to work with a common core of knowledge to select sampled cases for intensive deposition discovery, trials and negotiations of settlements. Truthful and reliable information was necessary about each plaintiff, about the buildings in which they worked, when and for how long they worked, the type of work they did, the doctors who treated them, the injuries they suffered, and their prior medical histories. And each plaintiff had to give this information consistently, reliably, and under oath, as with all relevant evidence. The information was to be provided according to strict time schedules so each stage could be completed and become the reliable basis for the next stage of pre-trial proceedings. Thus, depositions currently are being held, sometimes several each day, with various chosen plaintiffs, about various chosen buildings, and as to various chosen defendants, testing and expanding on the information previously provided at the core discovery stage. Motions and experts discovery will be entertained at the conclusion of the depositions and, if cases survive and do not result in settlements, trials will be scheduled.

The next stage in this case is to set schedules for the completion of fact depositions, motions, and experts, in the sampled cases. Reinstatement of cases will slow and

confuse the schedules. Those plaintiffs who experienced serious injuries or illnesses have the greatest interest in advancing their cases towards trial, and will be prejudiced if the schedules slow to allow reinstated plaintiffs to catch up and alter the mixes of the samplings of cases that have taken place.

Plaintiffs argue that the dismissed cases, if they were reinstated, could simply stand by, along with others, while the sampled cases proceed through depositions. Plaintiffs forget that the sampling was on the basis of a complete field of information relating to all viable cases, and that reinstatement of several for catch-up would skew the base of information. In order for sampling on an intelligent basis to succeed, the field from which the sample was chosen had to have a secure integrity, without changes or modifications in basic information as time goes by. No one can tell now if any of the 22 cases (or the scores of similarly situated cases) would have been chosen for the sample had the core questions been reliably answered. Furthermore, plaintiffs are wrong to say that there are just nine cases that were chosen for intensive deposition discovery. The process required the special masters first to select 150 cases. Of these, plaintiffs, defendants, and the court, would each select 15 cases, thus allowing 45 cases total to advance through full discovery. Order Amending Summary Order—August 2, 2011 Conference, Aug. 29, 2011. However, the situation was infinitely more complex. The plaintiffs whose depositions were taken changed as different buildings were chosen for intensive depositions. Some workers were chosen for the sample because they worked in numerous buildings, and some because they worked in one, or a few, buildings; some were chosen who alleged slight injuries and some because they alleged severe injuries; some because their injuries showed stronger relation to the toxins that floated into the buildings, and some because their injuries, often cancers, were more tenuously linked to exposure to the debris. The choices and

7

samplings were complex, often intuitive, and the errant plaintiffs should not now be allowed to skew the substantial progress that has been made in all the viable cases.

## III.   Conclusion

For the reasons stated, the motion by the 22 plaintiffs for Rule 60(b) relief is denied. The Clerk shall mark the motions identified in the attached schedule as terminated, and assure that the case and files of the plaintiffs are closed.

SO ORDERED.

Dated:   October 19, 2012
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

8

| Case Number/Title | Document # | Corresponding 21 MC 102 Document # | Motion Text | Filed |
|---|---|---|---|---|
| 05CV1181 McPartland v. Silverstein | 53 | 4411 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 05CV1347 Vario v. Silverstein | 61 | 4426 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 05CV1678 Lombardi v. Silverstein | 20 | 4408 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV8756 Daquila v. 1 World Trade Center | 79 | 4381 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV10878 Schmidt v. 1 World Trade Center | 53 | 4414 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV11281 Vanbelle v. 1 World Trade Center | 33 | 4423 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV12062 Ferraro v. 1 World Trade Center | 26 | 4393 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV13971 Kelly v. 1 World Trade Center | 39 | 4405 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 06CV 14632 Eramo v. 1 World Trade Center | 20 | 4387 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV1453 Acevedo v. Brookfield Financial Properties | 79 | 4369 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV1485 Colucci v. Brookfield Financial Properties | 79 | 4375 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV1594 Conception v. 80 Lafayette Associates | 92 | 4378 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV4240 Alloggio v. A Russo Wrecking | 24 | 4372 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV4523 Vivar v. 90 Church Street Limited Partnership | 91 | 4432 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV5285 Wallace v. American Express Bank | 48 | 4384 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV5323 Tucker v. Tribeca North End | 46 | 4420 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV5395 Higgins v. 200 Vesey Street | 52 | 4399 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV5408 Fairweather v. 7 World Trade Center | 38 | 4390 | FIRST MOTION to Reopen Case | 8/24/2012 |

| 07CV5430 Tedaldi v. A Russo Wrecking | 28 | 4417 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 07CV5558 Johnson v. 201 Warren Street | 46 | 4402 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 08CV2313 Vasquez v. 7 World Trade Company | 64 | 4429 | FIRST MOTION to Reopen Case | 8/24/2012 |
| 08CV5156 Hernandez v. 90 Church Street | 12 | 4396 | FIRST MOTION to Reopen Case | 8/24/2012 |